**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| Ocean Semiconductor LLC,<br><br>               Plaintiff<br><br>   v.<br><br>MediaTek Inc. and MediaTek USA Inc.<br>("MediaTek"),<br><br>               Defendant. | Civil Action No.: 6:20-cv-1210<br><br>JURY TRIAL DEMANDED<br><br>PATENT CASE |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Ocean Semiconductor LLC ("Ocean Semiconductor" or "Plaintiff") files this Complaint against MediaTek Inc. and MediaTek USA Inc. ("MediaTek USA") (collectively "MediaTek" or "Defendant"), seeking damages and other relief for patent infringement, and alleges with knowledge to its own acts, and on information and belief as to other matters, as follows:

## NATURE OF THE ACTION

1.     This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

## THE PARTIES

2.     Plaintiff Ocean Semiconductor is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 717 N. Union Street, Wilmington, DE 19805.

3.     On information and belief, Defendant MediaTek Inc. is a corporation organized under the law of Taiwan, with its principal place of business at No. 1, Dusing 1st Road, Hsinchu Science Park, Hsinchu, 20078, Taiwan.

4.     On information and belief, Defendant MediaTek USA, Inc. is a Delaware corporation with a principal place of business at 5914 West Courtyard Drive, Austin, Texas 78730.  On information and belief, MediaTek USA may be served through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

5.     Plaintiff Ocean Semiconductor is the assignee and owner of the patents at issue in this action: U.S. Patents Nos. 6,660,651, 6,907,305, 6,725,402, 6,968,248, 7,080,330, 6,836,691, and 8,676,538 (collectively, the "Asserted Patents").  Ocean Semiconductor holds all substantial rights, title, and interest in the Asserted Patents, including the exclusive right to sue MediaTek for infringement and recover damages, including damages for past infringement.

6.     Plaintiff Ocean Semiconductor seeks monetary damages and prejudgment interest for Defendant's past and ongoing direct and indirect infringement of the Asserted Patents.

7.     Each Defendant, MediaTek Inc. and MediaTek USA, Inc. ("MediaTek"), is a semiconductor company that designs, develops, sells, offers to sell, and imports into the United States semiconductor products in the mobile devices, tablet products, internet of things devices, automotive devices, networking and broadband devices, and home devices industry ("Accused Products").

8.     Defendant MediaTek, which has its own design centers in the United States (including a facility in Austin, Texas), contracts with third-party semiconductor fabricators or foundries ("MediaTek Foundry Partners") that own, operate, or control semiconductor fabrication plants ("fabs") within and/or outside of the United States ("International Facilities")

to produce the Accused Products.  One such MediaTek Foundry Partner is United

Microelectronics Corp. ("UMC").  *See, e.g.*, "Taiwan's UMC to scale down chip project with

Chinese partner," *available at* https://asia.nikkei.com/Economy/Trade-war/Exclusive-Taiwan-s-

UMC-to-scale-down-chip-project-with-Chinese-partner (last accessed October 12, 2020).

Another MediaTek Foundry Partner is Taiwan Semiconductor Manufacturing Company Ltd.

("TSMC").  *See* "Better Chipset Fabrication = Better Performance and Efficiency," *available at*

https://www.mediatek.com/innovations/fabrication-process-technology (last accessed October

12, 2020).  Both UMC and TSMC have a contractual partnership with MediaTek to design,

develop, or manufacture semiconductor products including integrated circuits for MediaTek.

9.     On information and belief, Defendant MediaTek (directly or through one or more

of its Foundry Partners such as UMC and TSMC) has a contractual relationship with Applied

Materials, Inc. ("Applied Materials") (*see, e.g.*, UMC's YY Chen video, *available at*

https://www.appliedmaterials.com/automation-software (last accessed October 12, 2020); *see

also* Applied Materials' job posting for "TSMC F15 E3 project," *available at*

http://www.mse.ntu.edu.tw/attachments/article/154/AMT_Summer%20Student%20Program_Job

%20Post_2013.pdf (last accessed October 12, 2020); *see also* "MediaTek to transfer 28nm chip

orders to UMC," *available at* https://www.digitimes.com/news/a20170724PD214.html (last

visited Oct. 12, 2020); *see also* "BRIEF-UMC orders machinery equipment from Applied

Materials' unit," *available at* https://www.reuters.com/article/brief-umc-orders-machinery-

equipment-fro/brief-umc-orders-machinery-equipment-from-applied-materials-unit-

idUKH9N1M601Z (last visited Oct. 12, 2020); *see also* "BRIEF-TSMC Orders Machinery

Equipment Worth T$1.06 Billion From Applied Materials," *available at*

https://www.reuters.com/article/brief-tsmc-orders-machinery-equipment-wo/brief-tsmc-orders-

machinery-equipment-worth-t1-06-billion-from-applied-materials-idUSS7N1QP04B (last visited

Oct. 12, 2020)), and PDF Solutions Inc. ("PDF Solutions") (*e.g.*,  "Taiwan Semiconductor

Manufacturing Company adopts PDF Solutions yield improvement technology," *available at*

https://www.edn.com/taiwan-semiconductor-manufacturing-company-adopts-pdf-solutions-

yield-improvement-technology/ (last accessed Oct. 12, 2020); *see also* "Exensio: Big Data in the

Fab," *available at* https://semiwiki.com/eda/4351-exensio-big-data-in-the-fab/ (last accessed

Oct. 12, 2020), and one or more of the MediaTek Foundry Partners (e.g., UMC and/or TSMC)

employ Applied Materials' semiconductor fabrication or manufacturing equipment, platforms,

and/or framework, including Applied Materials' E3 system, including the E3 factory

advanced/automation process control ("APC") platform hardware and/or software (collectively,

"E3 system"), PDF Solutions' Exensio hardware and/or software (collectively, "Exensio

system"), and/or other advanced/automation process control system and platform hardware

and/or software to design, develop, and/or manufacture Defendant MediaTek's semiconductor

devices, including integrated circuits.

10.     Upon information and belief, UMC and/or TSMC employ Applied Materials'

and/or PDF Solutions' semiconductor fabrication or manufacturing equipment, platforms, and/or

framework (e.g., Applied Materials' E3 system and/or PDF Solutions' Exensio system) at their

manufacturing facilities.  Applied Materials has received supplier awards and recognition from

UMC.  *See, e.g.,* https://www.appliedmaterials.com/files/nanochip-

journals/nanochip_v7_iss2_112912.pdf (last accessed October 12, 2020); *see also*

https://www.appliedmaterials.com/nanochip/nanochip-technology-journal/july-2014 (last visited

October 12, 2020); *see also* https://www.appliedmaterials.com/files/nanochip-journals/nanochip-

fab-solutions-12-2014-revised.pdf (last accessed October 12, 2020).  Applied Materials also has

4

received supplier awards and recognition from TSMC.  *See, e.g.*, "TSMC Recognizes

Outstanding Suppliers at Supply Chain Management Forum," *available at*

https://pr.tsmc.com/english/news/1873 (last accessed October 12, 2020).  On information and

belief, TSMC also employs PDF Solutions' Exensio system at TSMC's manufacturing facilities.

11.     On information and belief, Defendant MediaTek (directly or through its

MediaTek Foundry Partners such as UMC and/or TSMC) employs Applied Materials' E3 system

and/or PDF Solutions' Exensio system to design, develop or manufacture one or more systems,

products, devices, and integrated circuits for importation into the United States for use, sale,

and/or offer for sale in this District and throughout the United States, including, but not limited

to, mobile devices (e.g., Helio G, Helio A, Helio P, Helio X, mid-range 4G devices, and Google

Mobile Services express devices), tablet products (e.g., MiraVision), internet of things devices

(e.g., i500, i350, i300A, i300B, MT3620, MT2625, MT2621, MT2601, MT2523G, MT2523D,

MT2511, MT6280, MT2502, MT5931, MT3332, MT 2503, MT3333, MT3303, MT3337, and

MT3339), automotive devices (e.g., Autus I20 (MT2712) devices, Autus R10 (MT2706) devices,

and Autus T10 (MT2635) devices), networking and broadband devices (e.g., MediaTek T750

MT7688A, MT7628K/N/A, MT7623N/A, MT7622, MT7621A/N, MT7620N/A, RT3662,

RT3883, MT7688K, MT5932, MT8167S, MT7686, MT7682, MT7697H/HD, MT7681,

MT7687F, MT7697, MT7697D, MT7601E, MT7601U, MT7603E, MT7603U, MT7610E,

MT7610U, MT7612E, MT7612U, MT7615, MT7615B, MT7615S, MT7662E, MT7662U,

MT7668, RT3062, RT3070, RT3562, RT3573, RT3593, RT5370, RT5572, RT5592, MT3729,

MT7601, MT7610, MT7630, RT5372, RT539x, RT8070, RT2870, RT2890, RT309x, RT3290,

RT3370, RT3572, RT2070, RT2760, RT2770, RT2790, and RT2860), and home devices (e.g.,

MT8516 SoM, MT8516, MT8507, MT8502, MediaTek C4X Development Kit for Amazon

AVS, MT8516 2-Mic Development Kit for Amazon AVS, MT8516, MT8693, MT8685, MT8581, MT8580, MT8563, MT8553, MT1389/G, MT1389/J, MT1389/Q, S900 (MT9950), MT9613, MT9685, MT9602, MT5592, MT5582, MT5596, MT5597, MT5580, MT5561, MT5505, MT5398, MT5396, MT1959, MT1887, MT1865, MT1862, and MT1398), and similar systems, products, devices, and integrated circuits including, for example, products manufactured at 16nm technology node ("MediaTek APC Products").

12.     On information and belief, Defendant MediaTek (directly or through its MediaTek Foundry Partners such as UMC and/or TSMC) uses Applied Materials' E3 system and/or PDF Solutions' Exensio system to design, develop, or manufacture the MediaTek APC Products for importation into the United States for use, sale, and/or offer for sale in this district and throughout the United States.

13.     On information and belief, Defendant MediaTek, directly and/or through one or more of the MediaTek Foundry Partners (e.g., UMC), also employs Applied Materials' SmartFactory system or platform, including Advanced Productivity Family solutions and Smart Scheduling (collectively, "SmartFactory") and/or other similar proprietary or third-party scheduling and dispatching platform hardware and/or software (e.g., with similar technical and functional features) to design, develop, and/or manufacture Defendant MediaTek's semiconductor devices, including integrated circuits.  *See, e.g.*, "UMC Shares Success With The Applied SmartFactory®," *available at* https://www.appliedmaterials.com/files/umc-china_0.mp4 (last accessed Oct. 12, 2020).

14.     Upon information and belief, Defendant MediaTek (directly or through its MediaTek Foundry Partners such as UMC) employs Applied Materials' scheduling and

6

dispatching platform (e.g., Applied Materials' SmartFactory including SmartSched) at UMC's manufacturing facilities.

15.     On information and belief, Defendant MediaTek (directly or through its MediaTek Foundry Partners such as UMC) employs Applied Materials' SmartFactory and/or other similar proprietary or third-party scheduling and dispatching platform hardware and/or software (e.g., with similar technical and functional features) to design, develop or manufacture one or more systems, products, devices, and integrated circuits for importation into the United States for use, sale, and/or offer for sale in this District and throughout the United States, including, but not limited to, mobile devices (e.g., Helio G, Helio A, Helio P, Helio X, mid-range 4G devices, and Google Mobile Services express devices), tablet products (e.g., MiraVision), internet of things devices (e.g., i500, i350, i300A, i300B, MT3620, MT2625, MT2621, MT2601, MT2523G, MT2523D, MT2511, MT6280, MT2502, MT5931, MT3332, MT 2503, MT3333, MT3303, MT3337, and MT3339), automotive devices (e.g., Autus I20 (MT2712) devices, Autus R10 (MT2706) devices, and Autus T10 (MT2635) devices), networking and broadband devices (e.g., MediaTek T750 MT7688A, MT7628K/N/A, MT7623N/A, MT7622, MT7621A/N, MT7620N/A, RT3662, RT3883, MT7688K, MT5932, MT8167S, MT7686, MT7682, MT7697H/HD, MT7681, MT7687F, MT7697, MT7697D, MT7601E, MT7601U, MT7603E, MT7603U, MT7610E, MT7610U, MT7612E, MT7612U, MT7615, MT7615B, MT7615S, MT7662E, MT7662U, MT7668, RT3062, RT3070, RT3562, RT3573, RT3593, RT5370, RT5572, RT5592, MT3729, MT7601, MT7610, MT7630, RT5372, RT539x, RT8070, RT2870, RT2890, RT309x, RT3290, RT3370, RT3572, RT2070, RT2760, RT2770, RT2790, and RT2860), and home devices (e.g., MT8516 SoM, MT8516, MT8507, MT8502, MediaTek C4X Development Kit for Amazon AVS, MT8516 2-Mic Development Kit for Amazon AVS,

MT8516, MT8693, MT8685, MT8581, MT8580, MT8563, MT8553, MT1389/G, MT1389/J,

MT1389/Q, S900 (MT9950), MT9613, MT9685, MT9602, MT5592, MT5582, MT5596,

MT5597, MT5580, MT5561, MT5505, MT5398, MT5396, MT1959, MT1887, MT1865,

MT1862, and MT1398), flash memory and memory controllers (e.g., MT81XX SPI), and WiFi

extenders (MTK7621A) and similar systems, products, devices, and integrated circuits

("MediaTek Scheduling Products").

16.     On information and belief, Defendant MediaTek (directly or through its

MediaTek Foundry Partners such as UMC) uses Applied Materials' SmartFactory and/or other

similar proprietary or third-party scheduling and dispatching platform hardware and/or software

(e.g., with similar technical and functional features) to design, develop, or manufacture the

MediaTek Scheduling Products for importation into the United States for use, sale, and/or offer

for sale in this district and throughout the United States.

17.     On information and belief, Defendant MediaTek (directly and/or through its

MediaTek Foundry Partners such as UMC and/or TMC) has a contractual relationship with

ASML Holding N.V. and/or its subsidiaries ("ASML") (*see, e.g.*, LinkedIn Profile for Spencer

Lin, Operation Manager at ASML, *available at* https://www.linkedin.com/in/spencer-lin-

a48a0082/ (last visited Oct. 12, 2020); LinkedIn Profile for Leo Li, Product Engineer at ASML,

*available at* https://www.linkedin.com/in/leo-li-74222754/ (last visited Oct. 12, 2020); LinkedIn

Profile for Tsung Ming C., Applicant Engineer at ASML, *available at*

https://www.linkedin.com/in/tsung-ming-c-49b4b77/ (last visited Oct. 12, 2020); LinkedIn

Profile for Vince Liu, Product Manager at ASML, *available at*

https://www.linkedin.com/in/vince-liu-4820b149/ (last visited Oct. 12, 2020); and LinkedIn

Profile for Henry Yeh, Applicant Engineer at ASML, *available at*

https://www.linkedin.com/in/heavyyeh/ (last visited Oct. 12, 2020)), and that one or more of the

MediaTek Foundry Partners (e.g., UMC and/or) employ ASML's semiconductor fabrication or

manufacturing equipment and/or platforms (e.g., ASML's TWINSCAN system hardware and

software or "TWINSCAN") to design, develop, and/or manufacture Defendant MediaTek's

semiconductor products and devices, such as mobile devices (e.g., Helio G, Helio A, Helio P,

Helio X, mid-range 4G devices, and Google Mobile Services express devices), tablet products

(e.g., MiraVision), internet of things devices (e.g., i500, i350, i300A, i300B, MT3620, MT2625,

MT2621, MT2601, MT2523G, MT2523D, MT2511, MT6280, MT2502, MT5931, MT3332, MT

2503, MT3333, MT3303, MT3337, and MT3339), automotive devices (e.g., Autus I20

(MT2712) devices, Autus R10 (MT2706) devices, and Autus T10 (MT2635) devices),

networking and broadband devices (e.g., MediaTek T750 MT7688A, MT7628K/N/A,

MT7623N/A, MT7622, MT7621A/N, MT7620N/A, RT3662, RT3883, MT7688K, MT5932,

MT8167S, MT7686, MT7682, MT7697H/HD, MT7681, MT7687F, MT7697, MT7697D,

MT7601E, MT7601U, MT7603E, MT7603U, MT7610E, MT7610U, MT7612E, MT7612U,

MT7615, MT7615B, MT7615S, MT7662E, MT7662U, MT7668, RT3062, RT3070, RT3562,

RT3573, RT3593, RT5370, RT5572, RT5592, MT3729, MT7601, MT7610, MT7630, RT5372,

RT539x, RT8070, RT2870, RT2890, RT309x, RT3290, RT3370, RT3572, RT2070, RT2760,

RT2770, RT2790, and RT2860), and home devices (e.g., MT8516 SoM, MT8516, MT8507,

MT8502, MediaTek C4X Development Kit for Amazon AVS, MT8516 2-Mic Development Kit

for Amazon AVS, MT8516, MT8693, MT8685, MT8581, MT8580, MT8563, MT8553,

MT1389/G, MT1389/J, MT1389/Q, S900 (MT9950), MT9613, MT9685, MT9602, MT5592,

MT5582, MT5596, MT5597, MT5580, MT5561, MT5505, MT5398, MT5396, MT1959,

MT1887, MT1865, MT1862, and MT1398), flash memory and memory controllers (e.g.,

MT81XX SPI), and WiFi extenders (MTK7621A) and similar systems, products, devices, and integrated circuits ("MediaTek TWINSCAN Products").  *See, e.g.*, "BRIEF-Taiwan's UMC orders equipment from ASML for T$657 mln," *available at*

https://www.reuters.com/article/umc-corp-asml-holding-brief/brief-taiwans-umc-orders-equipment-from-asml-for-t657-mln-idUSS7N0P700I20140728 (last accessed October 12, 2020); *see also* "UMC buys equipment from ASML," *available at*

https://www.digitimes.com/news/a20160621PM200.html (last accessed October 12, 2020); *see also* "ASML apparently beats Nikon for UMC's huge 300-mm scanner order," *available at* https://www.eetimes.com/asml-apparently-beats-nikon-for-umcs-huge-300-mm-scanner-order/ (last accessed October 12, 2020); *see also* "ASML shares gain after reports of large TSMC order," *available at* https://seekingalpha.com/news/3636158-asml-shares-gain-after-reports-of-large-tsmc-order (last visited Oct. 12, 2020); *see also* "ASML's NXE Platform Performance," *available at*  http://euvlsymposium.lbl.gov/pdf/2013/pres/RudyPeeters.pdf (last visited Oct. 12, 2020).

18.     On information and belief, Defendant MediaTek (directly or through its MediaTek Foundry Partners such as UMC and/or TSMC) uses ASML's TWINSCAN platform and/or its software to design, develop, or manufacture the MediaTek TWINSCAN Products for importation into the United States for use, sale, and/or offer for sale in this district and throughout the United States.

19.     On information and belief, Defendant MediaTek (directly and/or through its MediaTek Foundry Partners) has a contractual relationship with ASML and/or its subsidiaries (*see, e.g.*, LinkedIn Profile for Spencer Lin, Operation Manager at ASML, *available at* https://www.linkedin.com/in/spencer-lin-a48a0082/ (last visited Oct. 12, 2020); LinkedIn Profile

for Leo Li, Product Engineer at ASML, *available at* https://www.linkedin.com/in/leo-li-74222754/ (last visited Oct. 12, 2020); LinkedIn Profile for Tsung Ming C., Applicant Engineer at ASML, *available at* https://www.linkedin.com/in/tsung-ming-c-49b4b77/ (last visited Oct. 12, 2020); LinkedIn Profile for Vince Liu, Product Manager at ASML, *available at* https://www.linkedin.com/in/vince-liu-4820b149/ (last visited Oct. 12, 2020); and LinkedIn Profile for Henry Yeh, Applicant Engineer at ASML, *available at* https://www.linkedin.com/in/heavyyeh/ (last visited Oct. 12, 2020)), and that one or more of the MediaTek Foundry Partners employ ASML's semiconductor fabrication or manufacturing equipment and/or platforms (e.g., ASML's YieldStar metrology and inspection system hardware and software) to design, develop, and/or manufacture Defendant MediaTek's semiconductor products and devices, such as mobile devices (e.g., Helio G, Helio A, Helio P, Helio X, mid-range 4G devices, and Google Mobile Services express devices), tablet products (e.g., MiraVision), internet of things devices (e.g., i500, i350, i300A, i300B, MT3620, MT2625, MT2621, MT2601, MT2523G, MT2523D, MT2511, MT6280, MT2502, MT5931, MT3332, MT2503, MT3333, MT3303, MT3337, and MT3339), automotive devices (e.g., Autus I20 (MT2712) devices, Autus R10 (MT2706) devices, and Autus T10 (MT2635) devices), networking and broadband devices (e.g., MediaTek T750 MT7688A, MT7628K/N/A, MT7623N/A, MT7622, MT7621A/N, MT7620N/A, RT3662, RT3883, MT7688K, MT5932, MT8167S, MT7686, MT7682, MT7697H/HD, MT7681, MT7687F, MT7697, MT7697D, MT7601E, MT7601U, MT7603E, MT7603U, MT7610E, MT7610U, MT7612E, MT7612U, MT7615, MT7615B, MT7615S, MT7662E, MT7662U, MT7668, RT3062, RT3070, RT3562, RT3573, RT3593, RT5370, RT5572, RT5592, MT3729, MT7601, MT7610, MT7630, RT5372, RT539x, RT8070, RT2870, RT2890, RT309x, RT3290, RT3370, RT3572, RT2070, RT2760,

RT2770, RT2790, and RT2860), and home devices (e.g., MT8516 SoM, MT8516, MT8507,

MT8502, MediaTek C4X Development Kit for Amazon AVS, MT8516 2-Mic Development Kit

for Amazon AVS, MT8516, MT8693, MT8685, MT8581, MT8580, MT8563, MT8553,

MT1389/G, MT1389/J, MT1389/Q, S900 (MT9950), MT9613, MT9685, MT9602, MT5592,

MT5582, MT5596, MT5597, MT5580, MT5561, MT5505, MT5398, MT5396, MT1959,

MT1887, MT1865, MT1862, and MT1398), and similar systems, products, devices, and

integrated circuits ("MediaTek YieldStar Products").  *See, e.g.*, "BRIEF-Taiwan's UMC orders

equipment from ASML for T$657 mln," *available at* https://www.reuters.com/article/umc-corp-

asml-holding-brief/brief-taiwans-umc-orders-equipment-from-asml-for-t657-mln-

idUSS7N0P700I20140728 (last accessed October 12, 2020); *see also* "UMC buys equipment

from ASML," *available at* https://www.digitimes.com/news/a20160621PM200.html (last

accessed October 12, 2020); *see also* "ASML apparently beats Nikon for UMC's huge 300-mm

scanner order," *available at* https://www.eetimes.com/asml-apparently-beats-nikon-for-umcs-

huge-300-mm-scanner-order/ (last accessed October 12, 2020); *see also* "ASML shares gain

after reports of large TSMC order," *available at* https://seekingalpha.com/news/3636158-asml-

shares-gain-after-reports-of-large-tsmc-order (last visited Oct. 12, 2020); *see also* "ASML's

NXE Platform Performance," *available at*

http://euvlsymposium.lbl.gov/pdf/2013/pres/RudyPeeters.pdf (last visited Oct. 12, 2020).

     20.     On information and belief, Defendant MediaTek (directly or through its

MediaTek Foundry Partners) uses ASML's YieldStar platform and/or its software to design,

develop, or manufacture the MediaTek YieldStar Products for importation into the United States

for use, sale, and/or offer for sale in this district and throughout the United States.

21.     Defendant MediaTek works with third parties to design and/or develop third party products, such as mobile devices, tablet products, internet of things devices, automotive devices, networking and broadband devices, and home devices that include one or more MediaTek APC Products, MediaTek Scheduling Products, MediaTek TWINSCAN Products, and/or MediaTek YieldStar Products ("Third Party Products").  MediaTek assists third parties, directly or through others, to import the Third Party Products into the United States and offer to sell, and sell, such Third Party Products in the United States.

## JURISDICTION AND VENUE

22.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*

23.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

24.     Defendant MediaTek is subject to this Court's general personal jurisdiction at least because MediaTek is a resident of Texas and in this District as defined by Texas law.

25.     Defendant MediaTek is subject to this Court's general and specific personal jurisdiction because MediaTek has sufficient minimum contacts within the State of Texas and this District, pursuant to due process and/or the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042.  On information and belief, MediaTek contracted with one or more Texas residents in this District and one or both parties performed the contract at least in part in the State of Texas and this District; MediaTek committed the tort of patent infringement in State of Texas and this District; MediaTek purposefully availed itself of the privileges of conducting business in the State of Texas and in this District; MediaTek regularly conducts and solicits business within the State of Texas and within this District; MediaTek recruits residents of the State of Texas and this District for employment inside or outside the State of Texas; Plaintiff's causes of action arise

13

directly from MediaTek's business contacts and other activities in the State of Texas and this

District; and MediaTek designs, develops, manufactures, distributes, makes available, imports,

sells and offers to sell products and services throughout the United States, including in this

judicial District, and introduces infringing products and services that into the stream of

commerce knowing that they would be used and sold in this judicial district and elsewhere in the

United States.

26.     Venue is proper in this judicial district under 28 U.S.C. § 1391 and 28 U.S.C. §

1400(b) at least because Defendant MediaTek Inc. is a foreign corporation and is subject to

personal jurisdiction in this District and/or has regularly conducted business in this District, and

because certain of the acts complained of herein occurred in this District.  Venue is also proper

for Defendant MediaTek USA at least because MediaTek USA has a regular and established

place of business in this District, including at least at 5914 West Courtyard Drive, Austin, Texas

78730.

27.     Additionally, Defendant MediaTek—directly or through intermediaries (including

distributors, retailers, and others), subsidiaries, alter egos, and/or agents—ships, distributes,

offers for sale, and/or sells their products in the United States and this District.  MediaTek has

purposefully and voluntarily placed one or more of its products into the stream of commerce that

infringe the Asserted Patents with the awareness and/or intent that they will be purchased by

consumers and businesses in this District.  Defendant MediaTek knowingly and purposefully

ships infringing products into, and within, this District through an established distribution

channel.  These infringing products have been, and continue to be, purchased by consumers and

businesses in this District.

## THE PATENTS-IN-SUIT

28.     On November 8, 2001, U.S. Patent Application No. 10/010,463 was filed at the USPTO ("the '463 Application").  The '463 Application was duly examined and issued as U.S. Patent No. 6,660,651 ("the '651 patent"), entitled "Adjustable Wafer Stage, and a Method and System for Performing Process Operations Using Same" on December 9, 2003.  A true and correct copy of the '651 patent is attached hereto as Exhibit A.

29.     Ocean Semiconductor is the owner of the '651 patent and has the full and exclusive right to bring actions and recover past, present, and future damages for Defendant MediaTek's infringement of the '651 patent.

30.     The inventions of the '651 patent resolve technical problems related to cross-wafer variations or non-uniformity characteristics in semiconductor wafers that are caused by different deposition and etch processes performed during semiconductor manufacturing.  For example, the '651 patent provides a process tool that includes an adjustable wafer stage that allows positioning or re-positioning of the wafer stage, such as raising, lowering, and varying a tilt of the surface of the wafer stage, in order to effectuate the deposition rates of semiconductor materials formed on a wafer.

31.     The claims of the '651 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the '651 patent recite one or more inventive concepts that are rooted in computerized semiconductor manufacturing or fabrication technologies, and overcome problems specifically arising in the realm of computerized semiconductor manufacturing or fabrication technologies.

32.     The '651 patent is directed to an invention that is not merely the routine or conventional use of the Internet or a generic computer.  Instead, it is directed to a process tool

15

with an adjustable wafer stage that offers customizable positioning features to facilitate raising, lowering, or tilting of the wafer stage.  This design allows surface adjustment of a wafer surface on which semiconductor materials are deposited to ensure a surface profile that is uniform across the surface of each wafer.  The '651 patent claims thus specify how a semiconductor manufacturing system is manipulated to yield a desired result.

33.     Accordingly, each claim of the '651 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

34.     On April 30, 2002, U.S. Patent Application No. 10/135,145 was filed at the USPTO (the "'145 Application").  The '145 Application was duly examined and issued as U.S. Patent No. 6,907,305 ("the '305 Patent"), entitled "Agent Reactive Scheduling in an Automated Manufacturing Environment" on June 14, 2005.  A true and correct copy of the '305 patent is attached hereto as Exhibit B.

35.     Ocean Semiconductor is the owner of the '305 patent and has the full and exclusive right to bring actions and recover past, present, and future damages for MediaTek's infringement of the '305 patent.

36.     The inventions of the '305 patent resolve technical problems related to utilization of process tools and scheduling and execution control of factory control systems.  For example, the '305 patent describes agents that reactively schedule, initiate, and execute activities, such as lot transport and processing, in response to certain events occurring during the semiconductor manufacturing process.

37.     The claims of the '305 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on

16

the Internet.  Instead, the claims of the '305 patent recite one or more inventive concepts that are rooted in computerized semiconductor manufacturing or fabrication technologies, and overcome problems specifically arising in the realm of computerized semiconductor manufacturing or fabrication technologies.

38.     The '305 patent is directed to an invention that is not merely the routine or conventional use of the Internet or a generic computer.  Instead, it is directed to a manufacturing system that facilitates the reactive scheduling of events resulting from certain factory state changes occurred within the process flow, such as a downtime occurrence, a machine becoming available, a processing chamber being down, a lot departing a machine, a preventative maintenance and equipment qualification being detected, and a wafer being completed.  This system, in turn, allows efficient management of factory control systems and optimizes wafer throughput.  The '305 patent claims thus specify how a semiconductor manufacturing system is manipulated to yield a desired result.

39.     Accordingly, each claim of the '305 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

40.     On July 31, 2000, U.S. Patent Application No. 09/629,073 was filed at the USPTO ("the '073 Application").  The '073 Application was duly examined and issued as U.S. Patent No. 6,725,402 ("the '402 Patent"), entitled "Method and Apparatus for Fault Detection of a Processing Tool and Control Thereof Using an Advanced Process Control (APC) Framework") on April 20, 2004.  A true and correct copy of the '402 patent is attached hereto as Exhibit C.

41.     Ocean Semiconductor is the owner of the '402 patent and has the full and exclusive right to bring actions and recover past, present, and future damages for MediaTek's infringement of the '402 patent.

42.     The inventions of the '402 patent resolve technical problems related to the delay in reporting manufacturing faults during semiconductor manufacturing, which led to faulty semiconductor devices being produced.  For example, the '402 patent describes systems and methods for shutting down a process tool or halting a manufacturing process in the presence of a manufacturing fault.

43.     The claims of the '402 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the '402 patent recite one or more inventive concepts that are rooted in computerized semiconductor manufacturing or fabrication technologies, and overcome problems specifically arising in the realm of computerized semiconductor manufacturing or fabrication technologies.

44.     The '402 patent is directed to an invention that is not merely the routine or conventional use of the Internet or a generic computer.  Instead, it is directed to a fault detection system in a semiconductor manufacturing process to detect the presence of a manufacturing fault and perform corrective measures in an expedient manner.  The '402 patent claims thus specify how a semiconductor manufacturing system is manipulated to yield a desired result.

45.     Accordingly, each claim of the '402 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

46.     On June 13, 2005, U.S. Patent Application No. 11/151,098 was filed at the USPTO ("the '098 Application"). The '098 Application was duly examined and issued as U.S. Patent No. 6,968,248 ("the '248 Patent"), entitled "Agent Reactive Scheduling in an Automated Manufacturing Environment" on November 22, 2005.  A true and correct copy of the '248 patent is attached hereto as Exhibit D.

47.     Ocean Semiconductor is the owner of the '248 patent and has the full and exclusive right to bring actions and recover past, present, and future damages for MediaTek's infringement of the '248 patent.

48.     The inventions of the '248 patent resolve technical problems related to utilization of process tools and scheduling and execution control of factory control systems.  For example, the '248 patent describes agents that reactively schedule, initiate, and execute activities, such as lot transport and processing, in response to certain events occurring during the semiconductor manufacturing process.

49.     The claims of the '248 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the '248 patent recite one or more inventive concepts that are rooted in computerized semiconductor manufacturing or fabrication technologies, and overcome problems specifically arising in the realm of computerized semiconductor manufacturing or fabrication technologies.

50.     The '248 patent is directed to an invention that is not merely the routine or conventional use of the Internet or a generic computer.  Instead, it is directed to a manufacturing system that facilitates the reactive scheduling of events resulting from certain factory state changes occurred within the process flow, such as a downtime occurrence, a machine becoming

19

available, a processing chamber being down, a lot departing a machine, a preventative maintenance and equipment qualification being detected, and a wafer being completed. This system, in turn, allows efficient management of factory control systems and optimizes wafer throughput. The '248 patent claims thus specify how a semiconductor manufacturing system is manipulated to yield a desired result.

51.    Accordingly, each claim of the '248 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

52.    On March 5, 2003, U.S. Patent Application No. 10/379,738, was filed at the USPTO ("the '738 Application"). The '738 Application was duly examined and issued as U.S. Patent No. 7,080,330 ("the '330 patent"), entitled "Concurrent Measurement of Critical Dimension and Overlay in Semiconductor Manufacturing," on Jul. 18, 2006. A true and correct copy of the '330 patent is attached hereto as Exhibit E.

53.    Ocean Semiconductor is the owner of the '330 patent and has the full and exclusive right to bring actions and recover past, present, and future damages for MediaTek's infringement of the '330 patent.

54.    The inventions of the '330 patent resolve technical problems related to forming integrated circuits without overlay errors. For example, the '330 patent describes a method that monitors and controls a semiconductor fabrication process that mitigate overlay errors and achieve desired critical dimensions.

55.    The claims of the '330 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the '330 patent recite one or more inventive concepts that are

20

rooted in computerized semiconductor manufacturing or fabrication technologies, and overcome problems specifically arising in the realm of computerized semiconductor manufacturing or fabrication technologies.

56.     The '330 patent is directed to an invention that is not merely the routine or conventional use of the Internet or a generic computer.  Instead, it is directed to, for example, partitioning a wafer into grid blocks to facilitate concurrent measurements of critical dimensions and overlay as the wafer matriculates through the semiconductor fabrication processes in order to mitigate overlay errors and bring critical dimension within acceptable tolerances.  The '330 patent claims thus specify how a semiconductor manufacturing process is manipulated to yield a desired result.

57.     Accordingly, each claim of the '330 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

58.     On May 1, 2003, U.S. Patent Application No. 10/427,620, was filed at the USPTO ("the '620 Application").  The '620 Application was duly examined and issued as U.S. Patent No. 6,836,691 ("the '691 patent"), entitled "Method and Apparatus for Filtering Metrology Data Based on Collection Purpose," on Dec. 28, 2004.  A true and correct copy of the '691 patent is attached hereto as Exhibit F.

59.     Ocean Semiconductor is the owner of the '691 patent and has the full and exclusive right to bring actions and recover past, present, and future damages for MediaTek's infringement of the '691 patent.

60.     The inventions of the '691 patent resolve technical problems related to a process controller collecting metrology data that does not accurately reflect the state of the fabrication

process or the device(s) being manufactured.  For example, the '691 patent describes a method of generating context data for the metrology data and filtering the metrology data to improve the performance of the process controller by removing outlier data that exhibits variation from a source other than normal process variation.

61.     The claims of the '691 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the '691 patent recite one or more inventive concepts that are rooted in computerized semiconductor manufacturing or fabrication technologies, and overcome problems specifically arising in the realm of computerized semiconductor manufacturing or fabrication technologies.

62.     The '691 patent is directed to an invention that is not merely the routine or conventional use of the Internet or a generic computer.  Instead, it is directed to, for example, a process controller that gathers and filters metrology data to remove data originated from non-process sources of variation in order to, for example, accurately identify a fault detection.  The '691 patent claims thus specify how a semiconductor manufacturing process is manipulated to yield a desired result.

63.     Accordingly, each claim of the '691 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

64.     On Nov 2, 2004, U.S. Patent Application No. 10/979,309, was filed at the USPTO ("the '309 Application").  The '309 Application was duly examined and issued as U.S. Patent No. 8,676,538 ("the '538 patent"), entitled "Adjusting Weighting of a parameter Relating to

Fault Detection Based on a Detected Fault," on Mar. 18, 2014.  A true and correct copy of the '538 patent is attached hereto as Exhibit G.

65.     Ocean Semiconductor is the owner of the '538 patent and has the full and exclusive right to bring actions and recover past, present, and future damages for MediaTek's infringement of the '538 patent.

66.     The inventions of the '538 patent resolve technical problems related to inaccurately detecting faults in semiconductor manufacturing processes.  For example, the '691 patent describes a method for employing a dynamic weighting technique in fault detection analysis, including determining a relationship of a parameter relating to the fault detection analysis to a detected fault and adjusting a weighting associating with the parameter based upon the relationship of the parameter to the detected fault.

67.     The claims of the '538 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the '538 patent recite one or more inventive concepts that are rooted in computerized semiconductor manufacturing or fabrication technologies, and overcome problems specifically arising in the realm of computerized semiconductor manufacturing or fabrication technologies.

68.     The '538 patent is directed to an invention that is not merely the routine or conventional use of the Internet or a generic computer.  Instead, it is directed to, for example, performing fault detection analyses using dynamic weighting processes to accurately assess faults associated with processing semiconductor wafers.  The '538 patent claims thus specify how a semiconductor manufacturing process is manipulated to yield a desired result.

69.     Accordingly, each claim of the '538 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

## COUNT I: INFRINGEMENT OF THE '651 PATENT

70.     Ocean Semiconductor repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

71.     At least as of October 15, 2020, Ocean Semiconductor placed MediaTek on actual notice of the '651 patent and actual notice that its actions constituted and continued to constitute infringement of the '651 patent.  MediaTek has had actual knowledge of the '651 patent and its own infringement of the '651 patent since at least that time.

72.     On information and belief, MediaTek has directly infringed and continues to infringe at least claim 19 of the '651 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, integrated circuits that are designed, developed, fabricated, and/or manufactured using the ASML TWINSCAN system and/or similar systems (e.g., with similar technical and functional features), and systems, products, and/or devices containing these integrated circuits including at least the MediaTek TWINSCAN Products ("'651 Accused Products") in violation of 35 U.S.C. § 271.  The '651 Accused Products are manufactured by a process including all of the limitations of at least claim 19 of the '651 patent. Each such product includes an integrated circuit fabricated or manufactured using, for example, the ASML TWINSCAN system.

73.     Discovery is expected to uncover the full extent of MediaTek's infringement of the '651 patent beyond the '651 Accused Products already identified herein.

74.     Specifically, on information and belief, MediaTek has directly infringed and continues to infringe at least claim 19 of the '651 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, the '651 Accused Products, in violation of 35 U.S.C. § 271(g).  On information and belief, MediaTek imports the '651 Accused Products into the United States for sales and distribution to customers located in the United States.  On information and belief, MediaTek sells and/or offers for sale the '651 Accused Products in the United States.  For example, MediaTek provides direct sales through its own sales channels and/or its distributors or contract manufacturers and sells the '651 Accused Products to businesses including original equipment manufacturers and electronic manufacturing service providers.  On information and belief, these direct sales include sales of the '651 Accused Products in the United States.  On information and belief, MediaTek offers the '651 Accused Products for sale in the United States.  For example, MediaTek engages in sales, marketing, and contracting activity in the United States and/or with United States offices of its customers.

75.     The '651 Accused Products are manufactured by a process including all of the limitations of at least claim 19 of the '651 patent.  For example, during the manufacture of the '651 Accused Products, a process chamber is provided that includes a wafer stage having a surface that is adjustable.  The surface of the wafer stage is adjusted by performing at least one of raising, lowering, and varying a tilt of the surface of the wafer stage.  A wafer from which the '651 Accused Products are fabricated or manufactured is positioned after adjusting the wafer stage such that a process operation is performed on the wafer positioned on the wafer stage.  On information and belief, MediaTek, directly or through one of its Foundry Partners, contracted with ASML to use this process to design, develop, or manufacture the '651 Accused Products.

25

On information and belief, MediaTek, directly or through one of its Foundry Partners, contracted with ASML to use this process to design, develop, or manufacture the '651 Accused Products.

76.    Attached hereto as Exhibit H, and incorporated by reference herein, is a claim chart detailing how each of the '651 Accused Products is manufactured using the ASML TWINSCAN system by a MediaTek Foundry Partner on behalf of MediaTek (e.g., TSMC and/or UMC) that satisfies each element of at least claim 19 of the '651 patent, literally or under the doctrine of equivalents.

77.    On information and belief, the '651 Accused Products are neither materially changed by subsequent processes nor become trivial and nonessential components of another product.

78.    On information and belief, at least as of October 15, 2020, MediaTek has induced and continues to induce others actively, knowingly, and intentionally, including its suppliers and contract manufacturers, to infringe one or more claims of the '651 patent, including, but not limited to, claim 19, pursuant to 35 U.S.C. § 271(b), by actively encouraging others to import into the United States, and/or make, use, sell, and/or offer to sell in the United States, the '651 Accused Products or products containing the infringing semiconductor components of the '651 Accused Products, by actively inducing others to infringe the '651 patent by making, using, selling, offering for sale, marketing, advertising, and/or importing the Accused Products to their customers for use in downstream products that infringe, or were manufactured using processes that infringe, the '651 patent, and by instructing others to infringe the '651 patent.

79.    For example, MediaTek actively promotes the sale, use, and importation of the '651 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website (e.g., https://www.mediatek.com/), press releases, training tutorials, development

and design tools, user manuals, and developer forums as well as at trade shows (e.g., the Consumer Technology Association's Consumer Electronics Show ("CES")) and MediaTek's online Discussion Forum and Expert's Corner) and through its sales and distribution channels that encourage infringing uses, sales, offers to sell, and importation of the '651 Accused Products.  As another example, MediaTek's representatives travel to customer sites in the United States for sales and support activity that includes working with customers to facilitate these customers' infringing testing, marketing, importation, and sales activity.  On information and belief, MediaTek supplies customers with '651 Accused Products so that they may be used, sold, or offered for sale by those customers.  For example, MediaTek provides direct sales to original equipment manufacturers and electronic manufacturing service providers.  On information and belief, these direct sales include sales to customers in the United States.  MediaTek also promotes, publicly on its website, uses of the '651 Accused Products by customers in the United States.  MediaTek additionally provides a wide range of technical support to customers and businesses, including product-specific solutions and community forums.

80.     On information and belief, MediaTek sells or offers for sale the '651 Accused Products to third parties that incorporate the '651 Accused Products into third party products ("the '651 Third Party Products").

81.     On information and belief, MediaTek assists third parties, directly and/or through intermediaries, in the development of the '651 Third Party Products and provides technical support and supports the sales of the '651 Third Party Products.

82.     On information and belief, since at least as of October 15, 2020, MediaTek has induced and continues to induce third parties with specific intent or willful blindness to import, make, use, sell, and/or offer to sell '651 Third Party Products that include at least one '651

Accused Product fabricated or manufactured using the ASML TWINSCAN system, or similar systems (e.g., with similar technical and functional features), whose make, use, sale, offer for sale, or importation constitutes direct infringement of at least one claim of the '651 patent.

83.     On information and belief, the '651 Third Party Products are imported into the United States for use, sale, and/or offer for sale in this District and throughout the United States ("Imported '651 Third Party Products").

84.     On information and belief, to the extent any entity other than MediaTek, including but not limited to any of MediaTek's Foundry Partners or third-party importers, imports the '651 Accused Products and/or Imported '651 Third-Party Products into the United States for or on behalf of MediaTek ("Third Party Importer"), MediaTek is liable for inducement of infringement by the Third Party Importer.  MediaTek has encouraged the Third Party Importer to infringe the '651 patent and intended that it do so.  This encouragement includes at least ordering or instructing the Third Party Importer to import the '651 Accused Products and/or '651 Third-Party Products into the United States, providing directions and other materials to the Third Party Importer to enable such importation, and/or conditioning the receipt of benefits (included but not limited to payment) to the Third Party Importer on such importation.  On information and belief, this behavior has continued since Defendant first became aware of the '651 patent and the infringement thereof.

85.     On information and belief, to the extent any entity other than MediaTek, including but not limited to any of MediaTek's Foundry Partners, uses the patented method to fabricate or manufacture the '651 Accused Products and/or Imported '651 Third-Party Products in the United States for or on behalf of MediaTek ("Third Party Manufacturer"), MediaTek is liable for inducement of infringement by the Third Party Manufacturer.  MediaTek has encouraged the

Third Party Manufacturer to infringe the '651 patent and intended that it do so.  This encouragement includes, without limitation, ordering the '651 Accused Products from the Third Party Manufacturer since Defendant first became aware of the '651 patent and its infringement by the Third Party Manufacturer.

86.     MediaTek has benefitted and continues to benefit from the importation into the United States of the '651 Accused Products, '651 Third Party Products, and Imported '651 Third Party Products.

87.     Ocean Semiconductor has suffered, and continues to suffer, damages as a result of MediaTek's infringement of the '651 patent.

88.     MediaTek has continued to infringe the '651 patent since at least October 15, 2020, despite being on notice of the '651 patent and its infringement.  MediaTek has therefore infringed the '651 patent knowingly, willfully, deliberately, and in disregard of Plaintiff's patent rights since at least October 15, 2020, at least by performing acts of infringement with actual knowledge of its direct and indirect infringement or while remaining willfully blind to the fact of its direct and indirect infringement.  As a result of at least this conduct, Plaintiff is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs under 35 U.S.C. § 285.

89.     Ocean Semiconductor reserves the right to modify its infringement theories as discovery progresses in this case.  Ocean Semiconductor shall not be estopped or otherwise limited or restricted for purposes of its infringement contentions or its claim constructions by the claim charts that it provides with this Complaint.  Ocean Semiconductor intends for the claim chart (Exhibit H) for the '651 patent to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart is not Ocean Semiconductor's preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT II: INFRINGEMENT OF THE '402 PATENT

90.     Ocean Semiconductor repeats and re-alleges the allegations of the above

paragraphs as if fully set forth herein.

91.     At least as of October 15, 2020, Ocean Semiconductor placed MediaTek on actual

notice of the '402 patent and actual notice that its actions constituted and continued to constitute

infringement of the '402 patent.  MediaTek has had actual knowledge of the '402 patent and its

own infringement of the '402 patent since at least that time.

92.     MediaTek has directly infringed and continues to infringe at least claim 1 of the

'402 patent literally or under the doctrine of equivalents, by importing into the United States,

and/or using, and/or selling, and/or offering for sale in the United States, without authority or

license, integrated circuits designed, developed, fabricated, and/or manufactured using the

Applied Materials E3 system, PDF Solutions' Exensio system, and/or similar systems (e.g., with

similar technical and functional features), and systems, products, and/or devices containing these

integrated circuits including at least the MediaTek APC Products ("'402 Accused Products") in

violation of 35 U.S.C. § 271.  The '402 Accused Products are manufactured by a process

including all of the limitations of at least claim 1 of the '402 patent.  Each such product includes

an integrated circuit fabricated or manufactured using, for example, the Applied Materials E3

system and/or PDF Solutions' Exensio system.

93.     Discovery is expected to uncover the full extent of MediaTek's infringement of

the '402 patent beyond the '402 Accused Products already identified herein.

94.     Specifically, on information and belief, MediaTek has directly infringed and

continues to infringe at least claim 1 of the '402 patent literally or under the doctrine of

equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for

sale in the United States, without authority or license, the '402 Accused Products, in violation of 35 U.S.C. § 271(g). On information and belief, MediaTek imports the '402 Accused Products into the United States for sales and distribution to customers located in the United States. On information and belief, MediaTek sells and/or offers for sale the '402 Accused Products in the United States. For example, MediaTek provides direct sales through its own sales channels and/or its distributors or contract manufacturers and sells the '402 Accused Products to businesses including original equipment manufacturers and electronic manufacturing service providers. On information and belief, these direct sales include sales of the '402 Accused Products in the United States. On information and belief, MediaTek offers the '402 Accused Products for sale in the United States. For example, MediaTek engages in sales, marketing, and contracting activity in the United States and/or with United States offices of its customers.

95. The '402 Accused Products are manufactured by a process including all of the limitations of at least claim 1 of the '402 patent. The '402 Accused Products are made by a claimed method. Each is an integrated circuit fabricated or manufactured using, for example, the Applied Materials E3 system and/or PDF Solutions' Exensio system. For example, during the manufacture of the '402 Accused Products (e.g., by the Applied Materials E3 system and/or PDF Solutions' Exensio system and/or similar systems (e.g., with similar technical and functional features)), operational state data of a processing tool related to the manufacture of a processing piece (e.g., from which the '402 Accused Products are fabricated or manufactured) is received at a first interface. The state data from the first interface is sent to a fault detection unit, including sending the state data from the first interface to a data collection unit. The state data is accumulated at the data collection unit and translated from a first communications protocol to a second communications protocol compatible with the fault detection unit. The translated state

data is sent from the data collection unit to the fault detection unit to determine if a fault condition exists with the processing tool based upon the state data received by the fault detection unit.  Then, a predetermined action is performed on the processing tool in response to the presence of a fault condition, and an alarm signal indicative of the fault condition is sent to an advanced process control framework from the fault detection unit providing that a fault condition of the processing tool was determined by the fault detection unit.  This manufacturing process also includes sending a signal by the framework to the first interface reflective of the predetermined action, and sending the accumulated state data from the data collection unit to the fault detection unit while a processing piece is being processed by the tool.  On information and belief, MediaTek, directly or through one of its Foundry Partners (e.g., TSMC and/or UMC), contracted with Applied Materials and PDF Solutions to use this process to design, develop, or manufacture the '402 Accused Products.

96.     Attached hereto as Exhibits I and J, and incorporated by reference herein, are claim charts detailing how each of the '402 Accused Products is manufactured using the Applied Materials E3 system and/or PDF Solutions' Exensio system by a MediaTek Foundry Partner on behalf of MediaTek (e.g., UMC and TSMC) that satisfies each element of at least claim 1 of the '402 patent, literally or under the doctrine of equivalents.

97.     On information and belief, the '402 Accused Products are neither materially changed by subsequent processes nor become trivial and nonessential components of another product.

98.     On information and belief, since at least as of October 15, 2020, MediaTek has induced and continues to induce others actively, knowingly, and intentionally, including its suppliers and contract manufacturers, to infringe one or more claims of the '402 patent,

including, but not limited to, claim 1, pursuant to 35 U.S.C. § 271(b), by actively encouraging others to import into the United States, and/or make, use, sell, and/or offer to sell in the United States, the '402 Accused Products or products containing the infringing semiconductor components of the '402 Accused Products, by actively inducing others to infringe the '402 patent by making, using, selling, offering for sale, marketing, advertising, and/or importing the Accused Products to their customers for use in downstream products that infringe, or were manufactured using processes that infringe, the '402 patent, and by instructing others to infringe the '402 patent.

99.    For example, MediaTek actively promotes the sale, use, and importation of the '402 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website (e.g., https://www.mediatek.com/), press releases, training tutorials, development and design tools, user manuals, and developer forums as well as at trade shows (e.g., the Consumer Technology Association's Consumer Electronics Show ("CES")) and MediaTek's online Discussion Forum and Expert's Corner) and through its sales and distribution channels that encourage infringing uses, sales, offers to sell, and importation of the '402 Accused Products.  As another example, MediaTek's representatives travel to customer sites in the United States for sales and support activity that includes working with customers to facilitate these customers' infringing testing, marketing, importation, and sales activity.  On information and belief, MediaTek supplies customers with '402 Accused Products so that they may be used, sold, or offered for sale by those customers.  For example, MediaTek provides direct sales to original equipment manufacturers and electronic manufacturing service providers.  On information and belief, these direct sales include sales to customers in the United States.  MediaTek also promotes, publicly on its website, uses of the '402 Accused Products by customers in the United

States.  MediaTek additionally provides a wide range of technical support to customers and businesses, including product-specific solutions and community forums.

100.    On information and belief, MediaTek sells or offers for sale the '402 Accused Products to third parties that incorporate the '402 Accused Products into third party products ("the '402 Third Party Products").

101.    On information and belief, MediaTek assists third parties, directly and/or through intermediaries, in the development of the '402 Third Party Products and provides technical support and supports the sales of the '402 Third Party Products.

102.    On information and belief, since at least as of October 15, 2020, MediaTek  has induced and continues to induce third parties with specific intent or willful blindness to import, make, use, sell, and/or offer to sell '402 Third Party Products that include at least one '402 Accused Product fabricated or manufactured using the Applied Materials E3 system, and/or PDF Solutions' Exensio system and/or similar systems (e.g., with similar technical and functional features), whose make, use, sale, offer for sale, or importation constitutes direct infringement of at least one claim of the '402 patent.

103.    On information and belief, the '402 Third Party Products are imported into the United States for use, sale, and/or offer for sale in this District and throughout the United States ("Imported '402 Third Party Products").

104.    On information and belief, to the extent any entity other than MediaTek, including but not limited to any of MediaTek's Foundry Partners or third-party importers, imports the '402 Accused Products and/or Imported '402 Third-Party Products into the United States for or on behalf of MediaTek ("Third Party Importer"), MediaTek is liable for inducement of infringement by the Third Party Importer.  MediaTek has encouraged the Third Party Importer to infringe

the '402 patent and intended that it do so.  This encouragement includes at least ordering or instructing the Third Party Importer to import the '402 Accused Products and/or '402 Third-Party Products into the United States, providing directions and other materials to the Third Party Importer to enable such importation, and/or conditioning the receipt of benefits (included but not limited to payment) to the Third Party Importer on such importation.  On information and belief, this behavior has continued since Defendant first became aware of the '402 patent and the infringement thereof.

105.    On information and belief, to the extent any entity other than MediaTek, including but not limited to any of MediaTek's Foundry Partners, uses the patented method to fabricate or manufacture the '402 Accused Products and/or Imported '402 Third-Party Products in the United States for or on behalf of MediaTek ("Third Party Manufacturer"), MediaTek is liable for inducement of infringement by the Third Party Manufacturer.  MediaTek has encouraged the Third Party Manufacturer to infringe the '402 patent and intended that it do so.  This encouragement includes, without limitation, ordering the '402 Accused Products from the Third Party Manufacturer since Defendant first became aware of the '402 patent and its infringement by the Third Party Manufacturer.

106.    MediaTek has benefitted and continues to benefit from the importation into the United States of the '402 Accused Products, '402 Third Party Products, and Imported '402 Third Party Products.

107.    Ocean Semiconductor has suffered, and continues to suffer, damages as a result of MediaTek's infringement of the '402 patent.

108.    MediaTek has continued to infringe the '402 patent since at least October 15, 2020, despite being on notice of the '402 patent and its infringement.  MediaTek has therefore

infringed the '402 patent knowingly, willfully, deliberately, and in disregard of Plaintiff's patent

rights since at least October 15, 2020, at least by performing acts of infringement with actual

knowledge of its direct and indirect infringement or while remaining willfully blind to the fact of

its direct and indirect infringement.  As a result of at least this conduct, Plaintiff is entitled to

enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs under 35 U.S.C. § 285.

109.    Ocean Semiconductor reserves the right to modify its infringement theories as

discovery progresses in this case.  Ocean Semiconductor shall not be estopped or otherwise

limited or restricted for purposes of its infringement contentions or its claim constructions by the

claim charts that it provides with this Complaint.  Ocean Semiconductor intends the claim chart

(Exhibits I and J) for the '402 patent to satisfy the notice requirements of Rule 8(a)(2) of the

Federal Rule of Civil Procedure.  The claim chart is not Ocean Semiconductor's preliminary or

final infringement contentions or preliminary or final claim construction positions.

## COUNT III: INFRINGEMENT OF THE '305 PATENT

110.    Ocean Semiconductor repeats and re-alleges the allegations of the above

paragraphs as if fully set forth herein.

111.    At least as of October 15, 2020, Ocean Semiconductor placed MediaTek on actual

notice of the '305 patent and actual notice that its actions constituted and continued to constitute

infringement of the '305 patent.  MediaTek has had actual knowledge of the '305 patent and its

own infringement of the '305 patent since at least that time.

112.    MediaTek has directly infringed and continues to infringe at least claim 1 of the

'305 patent literally or under the doctrine of equivalents, by importing into the United States,

and/or using, and/or selling, and/or offering for sale in the United States, without authority or

license, integrated circuits designed, developed, fabricated, and/or manufactured using the

Applied Materials SmartFactory system and/or other similar proprietary or third-party scheduling and dispatching platform hardware and/or software (e.g., with similar technical and functional features), and systems, products, and/or devices containing these integrated circuits including at least the MediaTek Scheduling Products ("'305 Accused Products")  in violation of 35 U.S.C. § 271.  The '305 Accused Products are manufactured by a process including all of the limitations of at least claim 1 of the '305 patent.  Each such product includes an integrated circuit fabricated or manufactured using, for example, the Applied Materials SmartFactory system.

113.    Discovery is expected to uncover the full extent of MediaTek's infringement of the '305 patent beyond the '305 Accused Products already identified herein.

114.    Specifically, on information and belief, MediaTek has directly infringed and continues to infringe at least claim 1 of the '305 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, the '305 Accused Products, in violation of 35 U.S.C. § 271(g).  On information and belief, MediaTek imports the '305 Accused Products into the United States for sales and distribution to customers located in the United States.  On information and belief, MediaTek sells and/or offers for sale the '305 Accused Products in the United States.  For example, MediaTek provides direct sales through its own sales channels and/or its distributors or contract manufacturers and sells the '305 Accused Products to businesses including original equipment manufacturers and electronic manufacturing service providers.  On information and belief, these direct sales include sales of the '305 Accused Products in the United States.  On information and belief, MediaTek offers the '305 Accused Products for sale in the United States.  For example, MediaTek engages in sales, marketing, and contracting activity in the United States and/or with United States offices of its customers.

115.    The '305 Accused Products are manufactured by a process including all of the limitations of at least claim 1 of the '305 patent.  For example, during the manufacture of the '305 Accused Products (e.g., by the Applied Material SmartFactory system or similar systems (e.g., with similar technical and functional features)), an occurrence of a predetermined event is detected in a process flow and a software scheduling agent is notified of the occurrence.  An action is reactively scheduled from the software scheduling agent responsive to the detection of the predetermined event.  An appointment is proactively scheduled with which the predetermined event is associated.  On information and belief, MediaTek, directly or through one of its Foundry Partners, contracted with Applied Materials to use this process to design, develop, or manufacture the '305 Accused Products.

116.    Attached hereto as Exhibit K, and incorporated by reference herein, is a claim chart detailing how each of the '305 Accused Products is manufactured using the Applied Materials SmartFactory system by a MediaTek Foundry Partner on behalf of MediaTek (e.g., UMC) that satisfies each element of at least claim 1 of the '305 patent, literally or under the doctrine of equivalents.

117.    On information and belief, the '305 Accused Products are neither materially changed by subsequent processes nor become trivial and nonessential components of another product.

118.    On information and belief, since at least as of October 15, 2020, MediaTek has induced and continues to induce others actively, knowingly, and intentionally, including its suppliers and contract manufacturers, to infringe one or more claims of the '305 patent, including, but not limited to, claim 1, pursuant to 35 U.S.C. § 271(b), by actively encouraging others to import into the United States, and/or make, use, sell, and/or offer to sell in the United

States, the '305 Accused Products or products containing the infringing semiconductor components of the '305 Accused Products, by actively inducing others to infringe the '305 patent by making, using, selling, offering for sale, marketing, advertising, and/or importing the Accused Products to their customers for use in downstream products that infringe, or were manufactured using processes that infringe, the '305 patent, and by instructing others to infringe the '305 patent.

119.    For example, MediaTek actively promotes the sale, use, and importation of the '305 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website (e.g., https://www.mediatek.com/), press releases, training tutorials, development and design tools, user manuals, and developer forums as well as at trade shows (e.g., the Consumer Technology Association's Consumer Electronics Show ("CES")) and MediaTek's online Discussion Forum and Expert's Corner) and through its sales and distribution channels that encourage infringing uses, sales, offers to sell, and importation of the '305 Accused Products.  As another example, MediaTek's representatives travel to customer sites in the United States for sales and support activity that includes working with customers to facilitate these customers' infringing testing, marketing, importation, and sales activity.  On information and belief, MediaTek supplies customers with '305 Accused Products so that they may be used, sold, or offered for sale by those customers.  For example, MediaTek provides direct sales to original equipment manufacturers and electronic manufacturing service providers.  On information and belief, these direct sales include sales to customers in the United States.  MediaTek also promotes, publicly on its website, uses of the '305 Accused Products by customers in the United States.  MediaTek additionally provides a wide range of technical support to customers and businesses, including product-specific solutions and community forums.

120.     On information and belief, MediaTek sells or offers for sale the '305 Accused Products to third parties that incorporate the '305 Accused Products into third party products ("the '305 Third Party Products").

121.     On information and belief, MediaTek assists third parties, directly and/or through intermediaries, in the development of the '305 Third Party Products and provides technical support and supports the sales of the '305 Third Party Products.

122.     On information and belief, since at least as of October 15, 2020, MediaTek has induced and continues to induce third parties with specific intent or willful blindness to import, make, use, sell, and/or offer to sell '305 Third Party Products that include at least one '305 Accused Product fabricated or manufactured using the Applied Materials SmartFactory system, or similar systems (e.g., with similar technical and functional features), whose make, use, sale, offer for sale, or importation constitutes direct infringement of at least one claim of the '305 patent.

123.      On information and belief, the '305 Third Party Products are imported into the United States for use, sale, and/or offer for sale in this District and throughout the United States ("Imported '305 Third Party Products").

124.     On information and belief, to the extent any entity other than MediaTek, including but not limited to any of MediaTek's Foundry Partners or third-party importers, imports the '305 Accused Products and/or Imported '305 Third-Party Products into the United States for or on behalf of MediaTek ("Third Party Importer"), MediaTek is liable for inducement of infringement by the Third Party Importer.  MediaTek has encouraged the Third Party Importer to infringe the '305 patent and intended that it do so.  This encouragement includes at least ordering or instructing the Third Party Importer to import the '305 Accused Products and/or '305 Third-

Party Products into the United States, providing directions and other materials to the Third Party Importer to enable such importation, and/or conditioning the receipt of benefits (included but not limited to payment) to the Third Party Importer on such importation.  On information and belief, this behavior has continued since Defendant first became aware of the '305 patent and the infringement thereof.

125.    On information and belief, to the extent any entity other than MediaTek, including but not limited to any of MediaTek's Foundry Partners, uses the patented method to fabricate or manufacture the '305 Accused Products and/or Imported '305 Third-Party Products in the United States for or on behalf of MediaTek ("Third Party Manufacturer"), MediaTek is liable for inducement of infringement by the Third Party Manufacturer.  MediaTek has encouraged the Third Party Manufacturer to infringe the '305 patent and intended that it do so.  This encouragement includes, without limitation, ordering the '305 Accused Products from the Third Party Manufacturer since Defendant first became aware of the '305 patent and its infringement by the Third Party Manufacturer.

126.    MediaTek has benefitted and continues to benefit from the importation into the United States of the '305 Accused Products, '305 Third Party Products, and Imported '305 Third Party Products.

127.    Ocean Semiconductor has suffered, and continues to suffer, damages as a result of MediaTek's infringement of the '305 patent.

128.    MediaTek has continued to infringe the '305 patent since at least October 15, 2020, despite being on notice of the '305 patent and its infringement.  MediaTek has therefore infringed the '305 patent knowingly, willfully, deliberately, and in disregard of Plaintiff's patent rights since at least October 15, 2020, at least by performing acts of infringement with actual

knowledge of its direct and indirect infringement or while remaining willfully blind to the fact of its direct and indirect infringement.  As a result of at least this conduct, Plaintiff is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs under 35 U.S.C. § 285.

129.    Ocean Semiconductor reserves the right to modify its infringement theories as discovery progresses in this case.  Ocean Semiconductor shall not be estopped or otherwise limited or restricted for purposes of its infringement contentions or its claim constructions by the claim charts that it provides with this Complaint.  Ocean Semiconductor intends the claim chart (Exhibit K) for the '305 patent to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart is not Ocean Semiconductor's preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT IV: INFRINGEMENT OF THE '248 PATENT

130.    Ocean Semiconductor repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

131.    At least as of October 15, 2020, Ocean Semiconductor placed MediaTek on actual notice of the '248 patent and actual notice that its actions constituted and continued to constitute infringement of the '248 patent.  MediaTek has had actual knowledge of the '248 patent and its own infringement of the '248 patent since at least that time.

132.    MediaTek has directly infringed and continues to infringe at least claim 1 of the '248 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, integrated circuits designed, developed, fabricated, and/or manufactured using the Applied Materials SmartFactory system and/or other similar proprietary or third-party scheduling and dispatching platform hardware and/or software (e.g., with similar technical and functional

42

features), and systems, products, and/or devices containing these integrated circuits including at least the MediaTek Scheduling Products ("'248 Accused Products") in violation of 35 U.S.C. § 271. The '248 Accused Products are manufactured by a process including all of the limitations of at least claim 1 of the '248 patent. Each such product includes an integrated circuit fabricated or manufactured using, for example, the Applied Materials SmartFactory system.

133. Discovery is expected to uncover the full extent of MediaTek's infringement of the '248 patent beyond the '248 Accused Products already identified herein.

134. Specifically, on information and belief, MediaTek has directly infringed and continues to infringe at least claim 1 of the '248 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, the '248 Accused Products, in violation of 35 U.S.C. § 271(g). On information and belief, MediaTek imports the '248 Accused Products into the United States for sales and distribution to customers located in the United States. On information and belief, MediaTek sells and/or offers for sale the '248 Accused Products in the United States. For example, MediaTek provides direct sales through its own sales channels and/or its distributors or contract manufacturers and sells the '248 Accused Products to businesses including original equipment manufacturers and electronic manufacturing service providers. On information and belief, these direct sales include sales of the '248 Accused Products in the United States. On information and belief, MediaTek offers the '248 Accused Products for sale in the United States. For example, MediaTek engages in sales, marketing, and contracting activity in the United States and/or with United States offices of its customers.

135. The '248 Accused Products are manufactured by a process including all of the limitations of at least claim 1 of the '248 patent. For example, during the manufacture of the

'248 Accused Products (e.g., by the Applied Material SmartFactory system or similar systems (e.g., with similar technical and functional features)), an occurrence of a predetermined event is automatically detected in an integrated, automated process flow.  A software scheduling agent is automatically notified of the occurrence; and an action is reactively scheduled from the software scheduling agent responsive to the detection of the predetermined event.  An appointment is proactively scheduled with which the predetermined event is associated, including proactively scheduling the appointment from the software scheduling agent.  On information and belief, MediaTek, directly or through one of its Foundry Partners, contracted with Applied Materials to use this process to design, develop, or manufacture the '248 Accused Products.

136.    Attached hereto as Exhibit L, and incorporated by reference herein, is a claim chart detailing how each of the '248 Accused Products is manufactured using the Applied Materials SmartFactory system by a MediaTek Foundry Partner on behalf of MediaTek (e.g., UMC) that satisfies each element of at least claim 1 of the '248 patent, literally or under the doctrine of equivalents.

137.    On information and belief, the '248 Accused Products are neither materially changed by subsequent processes nor become trivial and nonessential components of another product.

138.    On information and belief, since at least as of October 15, 2020, MediaTek has induced and continues to induce others actively, knowingly, and intentionally, including its suppliers and contract manufacturers, to infringe one or more claims of the '248 patent, including, but not limited to, claim 1, pursuant to 35 U.S.C. § 271(b), by actively encouraging others to import into the United States, and/or make, use, sell, and/or offer to sell in the United States, the '248 Accused Products or products containing the infringing semiconductor

components of the '248 Accused Products, by actively inducing others to infringe the '248 patent by making, using, selling, offering for sale, marketing, advertising, and/or importing the Accused Products to their customers for use in downstream products that infringe, or were manufactured using processes that infringe, the '248 patent, and by instructing others to infringe the '248 patent.

139.   For example, MediaTek actively promotes the sale, use, and importation of the '248 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website (e.g., https://www.mediatek.com/), press releases, training tutorials, development and design tools, user manuals, and developer forums as well as at trade shows (e.g., the Consumer Technology Association's Consumer Electronics Show ("CES")) and MediaTek's online Discussion Forum and Expert's Corner) and through its sales and distribution channels that encourage infringing uses, sales, offers to sell, and importation of the '248 Accused Products.  As another example, MediaTek's representatives travel to customer sites in the United States for sales and support activity that includes working with customers to facilitate these customers' infringing testing, marketing, importation, and sales activity.  On information and belief, MediaTek supplies customers with '248 Accused Products so that they may be used, sold, or offered for sale by those customers.  For example, MediaTek provides direct sales to original equipment manufacturers and electronic manufacturing service providers.  On information and belief, these direct sales include sales to customers in the United States.  MediaTek also promotes, publicly on its website, uses of the '248 Accused Products by customers in the United States.  MediaTek additionally provides a wide range of technical support to customers and businesses, including product-specific solutions and community forums.

140.    On information and belief, MediaTek sells or offers for sale the '248 Accused Products to third parties that incorporate the '248 Accused Products into third party products ("the '248 Third Party Products").

141.    On information and belief, MediaTek assists third parties, directly and/or through intermediaries, in the development and manufacture of the '248 Third Party Products and provides technical support and supports the sales of the '248 Third Party Products.

142.    On information and belief, since at least as of October 15, 2020, MediaTek  has induced and continues to induce third parties with specific intent or willful blindness to import, make, use, sell, and/or offer to sell '248 Third Party Products that include at least one '248 Accused Product fabricated or manufactured using the Applied Materials SmartFactory system, or similar systems (e.g., with similar technical and functional features), whose make, use, sale, offer for sale, or importation constitutes direct infringement of at least one claim of the '248 patent.

143.     On information and belief, the '248 Third Party Products are imported into the United States for use, sale, and/or offer for sale in this District and throughout the United States ("Imported '248 Third Party Products").

144.    On information and belief, to the extent any entity other than MediaTek, including but not limited to any of MediaTek's Foundry Partners or third-party importers, imports the '248 Accused Products and/or Imported '248 Third-Party Products into the United States for or on behalf of MediaTek ("Third Party Importer"), MediaTek is liable for inducement of infringement by the Third Party Importer.  MediaTek has encouraged the Third Party Importer to infringe the '248 patent and intended that it do so.  This encouragement includes at least ordering or instructing the Third Party Importer to import the '248 Accused Products and/or '248 Third-

Party Products into the United States, providing directions and other materials to the Third Party Importer to enable such importation, and/or conditioning the receipt of benefits (included but not limited to payment) to the Third Party Importer on such importation.  On information and belief, this behavior has continued since Defendant first became aware of the '248 patent and the infringement thereof.

145.    On information and belief, to the extent any entity other than MediaTek, including but not limited to any of MediaTek's Foundry Partners, uses the patented method to fabricate or manufacture the '248 Accused Products and/or Imported '248 Third-Party Products in the United States for or on behalf of MediaTek ("Third Party Manufacturer"), MediaTek is liable for inducement of infringement by the Third Party Manufacturer.  MediaTek has encouraged the Third Party Manufacturer to infringe the '248 patent and intended that it do so.  This encouragement includes, without limitation, ordering the '248 Accused Products from the Third Party Manufacturer since Defendant first became aware of the '248 patent and its infringement by the Third Party Manufacturer.

146.    MediaTek has benefitted and continues to benefit from the importation into the United States of the '248 Accused Products, '248 Third Party Products, and Imported '248 Third Party Products.

147.    Ocean Semiconductor has suffered, and continues to suffer, damages as a result of MediaTek's infringement of the '248 patent.

148.    MediaTek has continued to infringe the '248 patent since at least October 15, 2020, despite being on notice of the '248 patent and its infringement.  MediaTek has therefore infringed the '248 patent knowingly, willfully, deliberately, and in disregard of Plaintiff's patent rights since at least October 15, 2020, at least by performing acts of infringement with actual

knowledge of its direct and indirect infringement or while remaining willfully blind to the fact of its direct and indirect infringement. As a result of at least this conduct, Plaintiff is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs under 35 U.S.C. § 285.

149.    Ocean Semiconductor reserves the right to modify its infringement theories as discovery progresses in this case. Ocean Semiconductor shall not be estopped or otherwise limited or restricted for purposes of its infringement contentions or its claim constructions by the claim charts that it provides with this Complaint. Ocean Semiconductor intends the claim chart (Exhibit L) for the '248 patent to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure. The claim chart is not Ocean Semiconductor's preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT V: INFRINGEMENT OF THE '330 PATENT

150.    Ocean Semiconductor repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

151.    At least as of November 25, 2020, Ocean Semiconductor placed MediaTek on actual notice of the '330 patent and actual notice that its actions constituted and continued to constitute infringement of the '330 patent. MediaTek has had actual knowledge of the '330 patent and its own infringement of the '330 patent since at least that time.

152.    MediaTek has directly infringed and continues to infringe at least claim 19 of the '330 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, integrated circuits that are designed, developed, fabricated, and/or manufactured using the ASML YieldStar metrology and inspection system or platform and/or similar systems (e.g., with similar technical and functional features), and systems, products, and/or devices containing

these integrated circuits including at least the MediaTek YieldStar Products ("'330 Accused

Products") in violation of 35 U.S.C. § 271. The '330 Accused Products are manufactured by a

process including all of the limitations of at least claim 19 of the '330 patent. Each such product

includes an integrated circuit fabricated or manufactured using, for example, the ASML

YieldStar metrology and inspection system or platform.

153.    Discovery is expected to uncover the full extent of MediaTek's infringement of

the '330 patent beyond the '330 Accused Products already identified herein.

154.    On information and belief, MediaTek has directly infringed and continues to

infringe at least claim 19 of the '330 patent literally or under the doctrine of equivalents, by

importing into the United States, and/or using, and/or selling, and/or offering for sale in the

United States, without authority or license, the '330 Accused Products, in violation of 35 U.S.C.

§ 271(g). On information and belief, MediaTek imports the '330 Accused Products into the

United States for sales and distribution to customers located in the United States. On

information and belief, MediaTek sells and/or offers for sale the '330 Accused Products in the

United States. For example, MediaTek provides direct sales through its own sales channels

and/or its distributors or contract manufacturers and sells the '330 Accused Products to

businesses including original equipment manufacturers and electronic manufacturing service

providers. On information and belief, these direct sales include sales of the '330 Accused

Products in the United States. On information and belief, MediaTek offers the '330 Accused

Products for sale in the United States. For example, MediaTek engages in sales, marketing, and

contracting activity in the United States and/or with United States offices of its customers.

155.    The '330 Accused Products are manufactured by a process including all of the

limitations of at least claim 19 of the '330 patent. The '330 Accused Products are made by a

claimed method.  Each is an integrated circuit fabricated or manufactured using, for example, ASML's YieldStar metrology and inspection system hardware and software.

156.    For example, during the manufacture of the '330 Accused Products, a plurality of wafers undergoing the fabrication process is provided.  The plurality of wafers are mapped into one or more logical grids comprising one or more portions in which a grating structure for use in concurrent measurements is formed.  Concurrently, one or more critical dimensions and overlay in a wafer undergoing the fabrication process are measured.  It is determined if one or more of the critical dimensions are outside of acceptable tolerances, and whether an overlay error is occurring.  Control data based upon one or more concurrent measurements is developed when at least one of an overlay error is occurring and one or more of the critical dimensions fall outside of acceptable tolerances.  The control data is fed forward or backward to adjust one or more fabrication components or one or more operating parameters associated with the fabrication components when at least one of an overlay error is occurring and one or more of the critical dimensions fall outside of acceptable tolerances to mitigate overlay error and/or to bring critical dimension within acceptable tolerances.  On information and belief, MediaTek, directly or through one of its Foundry Partners (e.g., TSMC and/or UMC), contracted with ASML to use this process to design, develop, or manufacture the '330 Accused Products.

157.    Attached hereto as Exhibit M, and incorporated by reference herein, is a claim chart detailing how each of the '330 Accused Products is manufactured using the ASML YieldStar metrology and inspection system or platform by a MediaTek Foundry Partner on behalf of MediaTek (e.g., TSMC and/or UMC) that satisfies each element of at least independent claim 19 of the '330 patent, literally or under the doctrine of equivalents.

158.    On information and belief, the '330 Accused Products are neither materially changed by subsequent processes nor become trivial and nonessential components of another product.

159.    On information and belief, at least as of November 25, 2020, MediaTek has induced and continues to induce others, including its suppliers and contract manufacturers, to infringe one or more claims of the '330 patent, including, but not limited to, claim 19, pursuant to 35 U.S.C. § 271(b), by actively encouraging others to import into the United States, and/or make, use, sell, and/or offer to sell in the United States, the '330 Accused Products or products containing the infringing semiconductor components of the '330 Accused Products, by actively inducing others to infringe the '330 patent by making, using, selling, offering for sale, marketing, advertising, and/or importing the Accused Products to their customers for use in downstream products that infringe, or were manufactured using processes that infringe, the '330 patent, and by instructing others to infringe the '330 patent.

160.    For example, MediaTek actively promotes the sale, use, and importation of the '330 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website (e.g., https://www.mediatek.com/), press releases, training tutorials, development and design tools, user manuals, and developer forums as well as at trade shows (e.g., the Consumer Technology Association's Consumer Electronics Show ("CES")) and MediaTek's online Discussion Forum and Expert's Corner) and through its sales and distribution channels that encourage infringing uses, sales, offers to sell, and importation of the '330 Accused Products.  As another example, MediaTek's representatives travel to customer sites in the United States for sales and support activity that includes working with customers to facilitate these customers' infringing testing, marketing, importation, and sales activity.  On information and

belief, MediaTek supplies customers with '330 Accused Products so that they may be used, sold, or offered for sale by those customers.  For example, MediaTek provides direct sales to original equipment manufacturers and electronic manufacturing service providers.  On information and belief, these direct sales include sales to customers in the United States.  MediaTek also promotes, publicly on its website, uses of the '330 Accused Products by customers in the United States.  MediaTek additionally provides a wide range of technical support to customers and businesses, including product-specific solutions and community forums.

161.    On information and belief, MediaTek sells or offers for sale the '330 Accused Products to third parties that incorporate the '330 Accused Products into third party products ("the '330 Third Party Products").

162.    On information and belief, MediaTek assists third parties, directly and/or through intermediaries, in the development of the '330 Third Party Products and provides technical support and supports the sales of the '330 Third Party Products.

163.    On information and belief, at least as of November 25, 2020, MediaTek has induced and continues to induce third parties with specific intent or willful blindness to import, make, use, sell, and/or offer to sell '330 Third Party Products that include at least one '330 Accused Product fabricated or manufactured using the ASML YieldStar metrology and inspection system or platform, or similar systems (e.g., with similar technical and functional features), whose make, use, sale, offer for sale, or importation constitutes direct infringement of at least one claim of the '330 patent.

164.    On information and belief, the '330 Third Party Products are imported into the United States for use, sale, and/or offer for sale in this District and throughout the United States ("Imported '330 Third Party Products").

165.    On information and belief, to the extent any entity other than MediaTek, including but not limited to any of MediaTek's Foundry Partners or third-party importers, imports the '330 Accused Products and/or Imported '330 Third-Party Products into the United States for or on behalf of MediaTek ("Third Party Importer"), MediaTek is liable for inducement of infringement by the Third Party Importer.  MediaTek has encouraged the Third Party Importer to infringe the '330 patent and intended that it do so.  This encouragement includes at least ordering or instructing the Third Party Importer to import the '330 Accused Products and/or '330 Third-Party Products into the United States, providing directions and other materials to the Third Party Importer to enable such importation, and/or conditioning the receipt of benefits (included but not limited to payment) to the Third Party Importer on such importation.  On information and belief, this behavior has continued since Defendant first became aware of the '330 patent and the infringement thereof.

166.    On information and belief, to the extent any entity other than MediaTek, including but not limited to any of MediaTek's Foundry Partners, uses the patented method to fabricate or manufacture the '330 Accused Products and/or Imported '330 Third-Party Products in the United States for or on behalf of MediaTek ("Third Party Manufacturer"), MediaTek is liable for inducement of infringement by the Third Party Manufacturer.  MediaTek has encouraged the Third Party Manufacturer to infringe the '330 patent and intended that it do so.  This encouragement includes, without limitation, ordering the '330 Accused Products from the Third Party Manufacturer since Defendant first became aware of the '330 patent and its infringement by the Third Party Manufacturer.

167.    MediaTek has benefitted and continues to benefit from the importation into the United States of the '330 Accused Products, '330 Third Party Products, and Imported '330 Third Party Products.

168.    Ocean Semiconductor has suffered, and continues to suffer, damages as a result of MediaTek's infringement of the '330 patent.

169.    MediaTek has continued to infringe the '330 patent since at least November 25, 2020, despite being on notice of the '330 patent and its infringement.  MediaTek has therefore infringed the '330 patent knowingly, willfully, deliberately, and in disregard of Plaintiff's patent rights since at least November 25, 2020, at least by performing acts of infringement with actual knowledge of its direct and indirect infringement or while remaining willfully blind to the fact of its direct and indirect infringement.  As a result of at least this conduct, Plaintiff is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs under 35 U.S.C. § 285.

170.    Ocean Semiconductor reserves the right to modify its infringement theories as discovery progresses in this case.  Ocean Semiconductor shall not be estopped or otherwise limited or restricted for purposes of its infringement contentions or its claim constructions by the claim charts that it provides with this Complaint.  Ocean Semiconductor intends for the claim chart (Exhibit M) for the '330 patent to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart is not Ocean Semiconductor's preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT VI: INFRINGEMENT OF THE '691 PATENT

171.    Ocean Semiconductor repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

172.    At least as of November 25, 2020, Ocean Semiconductor placed MediaTek on actual notice of the '691 patent and actual notice that its actions constituted and continued to constitute infringement of the '691 patent.  MediaTek has had actual knowledge of the '691 patent and its own infringement of the '691 patent since at least that time.

173.    MediaTek has directly infringed and continues to infringe at least claim 1 of the '691 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, integrated circuits designed, developed, fabricated, and/or manufactured using Applied Materials' E3 system, PDF Solutions' Exensio system, and/or similar systems (e.g., with similar technical and functional features), and systems, products, and/or devices containing these integrated circuits including at least the MediaTek APC Products ("'691 Accused Products") in violation of 35 U.S.C. § 271.  The '691 Accused Products are manufactured by a process including all of the limitations of at least claim 1 of the '691 patent.  Each such product includes an integrated circuit fabricated or manufactured using, for example, Applied Materials' E3 system and/or PDF Solutions' Exensio system.

174.    Discovery is expected to uncover the full extent of MediaTek's infringement of the '691 patent beyond the '691 Accused Products already identified herein.

175.    On information and belief, MediaTek has directly infringed and continues to infringe at least claim 1 of the '691 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, the '691 Accused Products, in violation of 35 U.S.C. § 271(g).  On information and belief, MediaTek imports the '691 Accused Products into the United States for sales and distribution to customers located in the United States.  On

information and belief, MediaTek sells and/or offers for sale the '691 Accused Products in the

United States.  For example, MediaTek provides direct sales through its own sales channels

and/or its distributors or contract manufacturers and sells the '691 Accused Products to

businesses including original equipment manufacturers and electronic manufacturing service

providers.  On information and belief, these direct sales include sales of the '691 Accused

Products in the United States.  On information and belief, MediaTek offers the '691 Accused

Products for sale in the United States.  For example, MediaTek engages in sales, marketing, and

contracting activity in the United States and/or with United States offices of its customers.

176.    The '691 Accused Products are manufactured by a process including all of the

limitations of at least claim 1 of the '691 patent.  The '691 Accused Products are made by a

claimed method.  Each is an integrated circuit fabricated or manufactured using, for example,

Applied Materials' E3 system and/or PDF Solutions' Exensio system.  For example, during the

manufacture of the '691 Accused Products (e.g., by Applied Materials' E3 system and/or PDF

Solutions' Exensio system and/or similar systems (e.g., with similar technical and functional

features)), metrology data related to the processing of workpieces in a plurality of tools is

collected.  Context data for the metrology data, including collection purpose data, is collected.

The metrology data is filtered based on the collection purpose data.  A process control activity

related to one of the tools is conducted based on the filtered metrology data.  On information and

belief, MediaTek, directly or through one of its Foundry Partners, contracted with Applied

Materials and/or PDF Solutions to use this process to design, develop, or manufacture the '691

Accused Products.

177.    Attached hereto as Exhibits N and O, and incorporated by reference herein, are

claim charts detailing how each of the '691 Accused Products manufactured using the Applied

Materials E3 system and/or PDF Solutions' Exensio system by a MediaTek Foundry Partner on

behalf of MediaTek (e.g., TSMC and/or UMC) satisfies each element of at least claim 1 of the

'691 patent, literally or under the doctrine of equivalents.

178.    On information and belief, the '691 Accused Products are neither materially

changed by subsequent processes nor become trivial and nonessential components of another

product.

179.    On information and belief, at least as of November 25, 2020, MediaTek has

induced and continues to induce others, including its suppliers and contract manufacturers, to

infringe one or more claims of the '691 patent, including, but not limited to, claim 1, pursuant to

35 U.S.C. § 271(b), by actively encouraging others to import into the United States, and/or make,

use, sell, and/or offer to sell in the United States, the '691 Accused Products or products

containing the infringing semiconductor components of the '691 Accused Products, by actively

inducing others to infringe the '691 patent by making, using, selling, offering for sale, marketing,

advertising, and/or importing the Accused Products to their customers for use in downstream

products that infringe, or were manufactured using processes that infringe, the '691 patent, and

by instructing others to infringe the '691 patent.

180.    For example, MediaTek actively promotes the sale, use, and importation of the

'691 Accused Products in marketing materials, technical specifications, data sheets, web pages

on its website (e.g., https://www.mediatek.com/), press releases, training tutorials, development

and design tools, user manuals, and developer forums as well as at trade shows (e.g., the

Consumer Technology Association's Consumer Electronics Show ("CES")) and MediaTek's

online Discussion Forum and Expert's Corner) and through its sales and distribution channels

that encourage infringing uses, sales, offers to sell, and importation of the '691 Accused

Products.  As another example, MediaTek's representatives travel to customer sites in the United States for sales and support activity that includes working with customers to facilitate these customers' infringing testing, marketing, importation, and sales activity.  On information and belief, MediaTek supplies customers with '691 Accused Products so that they may be used, sold, or offered for sale by those customers.  For example, MediaTek provides direct sales to original equipment manufacturers and electronic manufacturing service providers.  On information and belief, these direct sales include sales to customers in the United States.  MediaTek also promotes, publicly on its website, uses of the '691 Accused Products by customers in the United States.  MediaTek additionally provides a wide range of technical support to customers and businesses, including product-specific solutions and community forums.

181.    On information and belief, MediaTek sells or offers for sale the '691 Accused Products to third parties that incorporate the '691 Accused Products into third party products ("the '691 Third Party Products").

182.    On information and belief, MediaTek assists third parties, directly and/or through intermediaries, in the development and manufacture of the '691 Third Party Products and provides technical support and supports the sales of the '691 Third Party Products.

183.    On information and belief, at least as of November 25, 2020, MediaTek also has induced and continues to induce third parties with specific intent or willful blindness to import, make, use, sell, and/or offer to sell '691 Third Party Products that include at least one '691 Accused Product fabricated or manufactured using the Applied Materials E3 system and/or PDF Solutions' Exensio system and/or similar systems (e.g., with similar technical and functional features) whose make, use, sale, offer for sale, or importation constitutes direct infringement of at least one claim of the '691 patent.

58

184.    On information and belief, the '691 Third Party Products are imported into the United States for use, sale, and/or offer for sale in this District and throughout the United States ("Imported '691 Third Party Products").

185.    On information and belief, to the extent any entity other than MediaTek, including but not limited to any of MediaTek's Foundry Partners or third-party importers, imports the '691 Accused Products and/or Imported '691 Third-Party Products into the United States for or on behalf of MediaTek ("Third Party Importer"), MediaTek is liable for inducement of infringement by the Third Party Importer.  MediaTek has encouraged the Third Party Importer to infringe the '691 patent and intended that it do so.  This encouragement includes at least ordering or instructing the Third Party Importer to import the '691 Accused Products and/or '691 Third-Party Products into the United States, providing directions and other materials to the Third Party Importer to enable such importation, and/or conditioning the receipt of benefits (included but not limited to payment) to the Third Party Importer on such importation.  On information and belief, this behavior has continued since Defendant first became aware of the '691 patent and the infringement thereof.

186.    On information and belief, to the extent any entity other than MediaTek, including but not limited to any of MediaTek's Foundry Partners, uses the patented method to fabricate or manufacture the '691 Accused Products and/or Imported '691 Third-Party Products in the United States for or on behalf of MediaTek ("Third Party Manufacturer"), MediaTek is liable for inducement of infringement by the Third Party Manufacturer.  MediaTek has encouraged the Third Party Manufacturer to infringe the '691 patent and intended that it do so.  This encouragement includes, without limitation, ordering the '691 Accused Products from the Third

Party Manufacturer since Defendant first became aware of the '691 patent and its infringement by the Third Party Manufacturer.

187.    MediaTek has benefitted and continues to benefit from the importation into the United States of the Imported '691 Third Party Products.

188.    Ocean Semiconductor has suffered, and continues to suffer, damages as a result of MediaTek's infringement of the '691 patent.

189.    MediaTek has continued to infringe the '691 patent since at least November 25, 2020, despite being on notice of the '691 patent and its infringement.  MediaTek has therefore infringed the '691 patent knowingly, willfully, deliberately, and in disregard of Plaintiff's patent rights since at least November 25, 2020, at least by performing acts of infringement with actual knowledge of its direct and indirect infringement or while remaining willfully blind to the fact of its direct and indirect infringement.  As a result of at least this conduct, Plaintiff is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs under 35 U.S.C. § 285.

190.    Ocean Semiconductor reserves the right to modify its infringement theories as discovery progresses in this case.  Ocean Semiconductor shall not be estopped or otherwise limited or restricted for purposes of its infringement contentions or its claim constructions by the claim charts that it provides with this Complaint.  Ocean Semiconductor intends the claim chart (Exhibits N and O) for the '691 patent to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart is not Ocean Semiconductor's preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT VII: INFRINGEMENT OF THE '538 PATENT

191.    Ocean Semiconductor repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

192.    At least as of November 25, 2020, Ocean Semiconductor placed MediaTek on actual notice of the '538 patent and actual notice that its actions constituted and continued to constitute infringement of the '538 patent.  MediaTek has had actual knowledge of the '538 patent and its own infringement of the '538 patent since at least that time.

193.    MediaTek has directly infringed and continues to infringe at least claim 1 of the '538 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, integrated circuits designed, developed, fabricated, and/or manufactured using Applied Materials' E3 system and/or PDF Solutions' Exensio system and/or similar systems (e.g., with similar technical and functional features), and systems, products, and/or devices containing these integrated circuits including at least the MediaTek APC Products ("'538 Accused Products") in violation of 35 U.S.C. § 271.  The '538 Accused Products are manufactured by a process including all of the limitations of at least claim 1 of the '538 patent.  Each such product includes an integrated circuit fabricated or manufactured using, for example, Applied Materials' E3 system and/or PDF Solutions' Exensio system.

194.    Discovery is expected to uncover the full extent of MediaTek's infringement of the '538 patent beyond the '538 Accused Products already identified herein.

195.    On information and belief, MediaTek has directly infringed and continues to infringe at least claim 1 of the '538 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, the '538 Accused Products, in violation of 35 U.S.C. § 271(g).  On information and belief, MediaTek imports the '538 Accused Products into the United States for sales and distribution to customers located in the United States.  On

61

information and belief, MediaTek sells and/or offers for sale the '538 Accused Products in the

United States.  For example, MediaTek provides direct sales through its own sales channels

and/or its distributors or contract manufacturers and sells the '538 Accused Products to

businesses including original equipment manufacturers and electronic manufacturing service

providers.  On information and belief, these direct sales include sales of the '538 Accused

Products in the United States.  On information and belief, MediaTek offers the '538 Accused

Products for sale in the United States.  For example, MediaTek engages in sales, marketing, and

contracting activity in the United States and/or with United States offices of its customers.

196.    The '538 Accused Products are manufactured by a process including all of the

limitations of at least claim 1 of the '538 patent.  The '538 Accused Products are made by a

claimed method.  Each is an integrated circuit fabricated or manufactured using, for example,

Applied Materials' E3 system and/or PDF Solutions' Exensio system.  For example, during the

manufacture of the '538 Accused Products (e.g., by Applied Materials' E3 system and/or PDF

Solutions' Exensio system (e.g., with similar technical and functional features)), a computer a

fault detection analysis relating to processing of a workpiece is performed.  A relationship of a

parameter relating to said fault detection analysis to a detected fault is determined in the

computer.  A weighting of said parameter based upon said relationship of said parameter to said

detected fault is adjusted in said computer.  The fault detection analysis relating to processing of

a subsequent workpiece using said adjusted weighting is performed in said computer.  On

information and belief, MediaTek, directly or through one of its Foundry Partners, contracted

with Applied Materials and/or PDF Solutions to use this process to design, develop, or

manufacture the '538 Accused Products.

197.    Attached hereto as Exhibits P and Q, and incorporated by reference herein, are claim charts detailing how each of the '538 Accused Products manufactured using the Applied Materials E3 system and/or PDF Solutions' Exensio system by a MediaTek Foundry Partner on behalf of MediaTek (e.g., TSMC and/or UMC) satisfies each element of at least claim 1 of the '538 patent, literally or under the doctrine of equivalents.

198.    On information and belief, the '538 Accused Products are neither materially changed by subsequent processes nor become trivial and nonessential components of another product.

199.    On information and belief, at least as of November 25, 2020, MediaTek has induced and continues to induce others, including its suppliers and contract manufacturers, to infringe one or more claims of the '538 patent, including, but not limited to, claim 1, pursuant to 35 U.S.C. § 271(b), by actively encouraging others to import into the United States, and/or make, use, sell, and/or offer to sell in the United States, the '538 Accused Products or products containing the infringing semiconductor components of the '538 Accused Products, by actively inducing others to infringe the '538 patent by making, using, selling, offering for sale, marketing, advertising, and/or importing the Accused Products to their customers for use in downstream products that infringe, or were manufactured using processes that infringe, the '538 patent, and by instructing others to infringe the '538 patent.

200.    For example, MediaTek actively promotes the sale, use, and importation of the '538 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website (e.g., https://www.mediatek.com/), press releases, training tutorials, development and design tools, user manuals, and developer forums as well as at trade shows (e.g., the Consumer Technology Association's Consumer Electronics Show ("CES")) and MediaTek's

online Discussion Forum and Expert's Corner) and through its sales and distribution channels

that encourage infringing uses, sales, offers to sell, and importation of the '538 Accused

Products.  As another example, MediaTek's representatives travel to customer sites in the United

States for sales and support activity that includes working with customers to facilitate these

customers' infringing testing, marketing, importation, and sales activity.  On information and

belief, MediaTek supplies customers with '538 Accused Products so that they may be used, sold,

or offered for sale by those customers.  For example, MediaTek provides direct sales to original

equipment manufacturers and electronic manufacturing service providers.  On information and

belief, these direct sales include sales to customers in the United States.  MediaTek also

promotes, publicly on its website, uses of the '538 Accused Products by customers in the United

States.  MediaTek additionally provides a wide range of technical support to customers and

businesses, including product-specific solutions and community forums.

201.    On information and belief, MediaTek sells or offers for sale the '538 Accused

Products to third parties that incorporate the '538 Accused Products into third party products

("the '538 Third Party Products").

202.    On information and belief, MediaTek assists third parties, directly and/or through

intermediaries, in the development and manufacture of the '538 Third Party Products and

provides technical support and supports the sales of the '538 Third Party Products.

203.    On information and belief, at least as of November 25, 2020, MediaTek also has

induced and continues to induce third parties with specific intent or willful blindness to import,

make, use, sell, and/or offer to sell '538 Third Party Products that include at least one '538

Accused Product fabricated or manufactured using the Applied Materials E3 system and/or PDF

Solutions' Exensio system and/or similar systems (e.g., with similar technical and functional

features) whose make, use, sale, offer for sale, or importation constitutes direct infringement of at least one claim of the '538 patent.

204.     On information and belief, the '538 Third Party Products are imported into the United States for use, sale, and/or offer for sale in this District and throughout the United States ("Imported '538 Third Party Products").

205.     On information and belief, to the extent any entity other than MediaTek, including but not limited to any of MediaTek's Foundry Partners or third-party importers, imports the '538 Accused Products and/or Imported '538 Third-Party Products into the United States for or on behalf of MediaTek ("Third Party Importer"), MediaTek is liable for inducement of infringement by the Third Party Importer.  MediaTek has encouraged the Third Party Importer to infringe the '538 patent and intended that it do so.  This encouragement includes at least ordering or instructing the Third Party Importer to import the '538 Accused Products and/or '538 Third-Party Products into the United States, providing directions and other materials to the Third Party Importer to enable such importation, and/or conditioning the receipt of benefits (included but not limited to payment) to the Third Party Importer on such importation.  On information and belief, this behavior has continued since Defendant first became aware of the '538 patent and the infringement thereof.

206.     On information and belief, to the extent any entity other than MediaTek, including but not limited to any of MediaTek's Foundry Partners, uses the patented method to fabricate or manufacture the '538 Accused Products and/or Imported '538 Third-Party Products in the United States for or on behalf of MediaTek ("Third Party Manufacturer"), MediaTek is liable for inducement of infringement by the Third Party Manufacturer.  MediaTek has encouraged the Third Party Manufacturer to infringe the '538 patent and intended that it do so.  This

encouragement includes, without limitation, ordering the '538 Accused Products from the Third Party Manufacturer since Defendant first became aware of the '538 patent and its infringement by the Third Party Manufacturer.

207.    MediaTek has benefitted and continues to benefit from the importation into the United States of the Imported '538 Third Party Products.

208.    Ocean Semiconductor has suffered, and continues to suffer, damages as a result of MediaTek's infringement of the '538 patent.

209.    MediaTek has continued to infringe the '538 patent since at least November 25, 2020, despite being on notice of the '538 patent and its infringement.  MediaTek has therefore infringed the '538 patent knowingly, willfully, deliberately, and in disregard of Plaintiff's patent rights since at least November 25, 2020, at least by performing acts of infringement with actual knowledge of its direct and indirect infringement or while remaining willfully blind to the fact of its direct and indirect infringement.  As a result of at least this conduct, Plaintiff is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs under 35 U.S.C. § 285.

210.    Ocean Semiconductor reserves the right to modify its infringement theories as discovery progresses in this case.  Ocean Semiconductor shall not be estopped or otherwise limited or restricted for purposes of its infringement contentions or its claim constructions by the claim charts that it provides with this Complaint.  Ocean Semiconductor intends the claim chart (Exhibits P and Q)  for the '538 patent to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart is not Ocean Semiconductor's preliminary or final infringement contentions or preliminary or final claim construction positions.

## RELIEF REQUESTED

WHEREFORE, Ocean Semiconductor demands judgment for itself and against MediaTek as follows:

A.      A judgment that Defendant MediaTek has infringed, and continues to infringe, one or more claims of each of the Asserted Patents;

B.      A judgment that Defendant MediaTek has induced infringement, and continues to induce infringement, of one or more claims of each of the Asserted Patents;

C.      A judgment that Defendant MediaTek has contributed to, and continues to contribute to, the infringement of one or more claims of each of the Asserted Patents;

D.      A judgment awarding Ocean Semiconductor damages to be paid by Defendant MediaTek in an amount to be proven at trial adequate to compensate Ocean Semiconductor for MediaTek' past infringement and any continuing or future infringement through the date such judgment is entered, but in no event less than a reasonable royalty for MediaTek's infringement;

E.      A judgment awarding Ocean Semiconductor treble damages pursuant to 35 U.S.C. § 284 as a result of Defendant MediaTek's willfulness;

F.      A judgment and order finding that this case is exceptional and awarding Ocean Semiconductor its reasonable attorneys' fees to be paid by Defendant MediaTek as provided by 35 U.S.C. § 285;

G.      A judgment awarding expenses, costs, and disbursements in this action against Defendant MediaTek, including pre-judgment and post-judgment interest; and

H.      A judgment awarding Ocean Semiconductor such other relief as the Court may deem just and equitable.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  December 31, 2020                    Respectfully submitted,

                                   By:   /s/ Alex Chan
                                         Timothy Devlin (*pro hac vice* pending)
                                         tdevlin@devlinlawfirm.com
                                         Henrik Parker (*pro hac vice* pending)
                                         hparker@devlinlawfirm.com
                                         Alex Chan   (State Bar No. 24108051)
                                         achan@devlinlawfirm.com
                                         DEVLIN LAW FIRM LLC
                                         1526 Gilpin Avenue
                                         Wilmington, Delaware 19806
                                         Telephone: (302) 449-9010
                                         Facsimile: (302) 353-4251

                                         *Attorneys for Plaintiff,*
                                         *Ocean Semiconductor LLC*